**IN THE U.S. DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

HARTFORD FIRE AND INSURANCE COMPANY

　　　　　　　　Plaintiff,

v.

E.R. STUEBNER, INC.; RADCRETE, INC.; CONEX
ENTERPRISES, INC.; DG CORP., INC.; AISTRA
CONSTRUCTION, INC.; AISTRA EX, INC.;
DOUGLAS A. GEORGE; MARIA E. GEORGE and
PETER D. RADWANSKI

　　　　　　　　Defendants.

CIVIL ACTION NO.

JURY TRIAL DEMANDED

## <u>COMPLAINT</u>

Hartford Fire and Insurance Company asserts the following for its Complaint.

## <u>THE PARTIES</u>

1.　　Hartford Fire and Insurance Company ("Hartford") is a Connecticut corporation with its principal place of business in Hartford, Connecticut.

2.　　Defendants are signatories to at least one of two indemnity agreements in favor of Hartford: the General Indemnity Agreement dated May 31, 2001 attached hereto as Exhibit A (the "2001 GIA") and/or the General Indemnity Agreement dated February 28, 2018 attached hereto as Exhibit B (the "2018 GIA").

3.　　Upon information and belief, E.R. Stuebner, Inc. ("Stuebner") is a Pennsylvania corporation with its principal place of business in 227 Blair Ave., Reading, PA, 19601.

4.　　Upon information and belief, Radcrete, Inc. is a Pennsylvania corporation with its principal place of business in 227 Blair Ave., Reading, PA, 19601.

5.      Upon information and belief, Conex Enterprises, Inc. ("Conex") is a Pennsylvania corporation with its principal place of business in 227 Blair Ave., Reading, PA, 19601.

6.      Upon information and belief, DG Corp., Inc. is a Pennsylvania corporation with its principal place of business in 227 Blair Ave., Reading, PA, 19601.

7.      Upon information and belief, Aistra Construction, Inc. is a Pennsylvania corporation with its principal place of business in 227 Blair Ave., Reading, PA, 19601.

8.      Upon information and belief, Aistra Ex, Inc. is a Pennsylvania corporation with its principal place of business in 227 Blair Ave., Reading, PA, 19601.

9.      Upon information and belief, Douglas A. George is a citizen of Pennsylvania and resides at 38 Maack Rd., Pottstown, PA 19465.

10.     Upon information and belief, Maria E. George is a citizen of Pennsylvania and resides at 38 Maack Rd., Pottstown, PA 19465.

11.     Upon information and belief, Peter D. Radwanski is a citizen of Pennsylvania and resides at 335 Mail Route Rd, Sinking Spring, PA 19608.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over this matter pursuant to 28 USC §1332 in that Plaintiff is a citizen of Connecticut and all Defendants are citizens of Pennsylvania and the amount in controversy exceeds $75,000 exclusive of interest and costs.

13.     Venue in this district is proper pursuant to 28USC §1391(b)(2) and (3) in that a substantial part of the events or omissions giving rise to this action occurred in this judicial district and the Defendants are subject to the Court's personal jurisdiction in this judicial district.

14.     In the 2018 GIA, the signatories expressly waive any objection or challenge to venue, lack of personal jurisdiction and forum non conveniens.  Exhibit B, ¶ 17(c)(ii).

## **FACTS COMMON TO ALL COUNTS**

15.     On or about April 25, 2018, Stuebner entered into a contract with the West Chester Area School District in the initial amount of $7,437,000 for a project relating to renovations and additions to the East Goshen Elementary School.

16.     Hartford, as surety, and Stuebner, as principal, issued Performance Bond No. 44BCSHW8012 relating to this East Goshen Elementary School project.

17.     As an inducement to execute the bond, Stuebner, Conex and Peter Radwanski executed a General Agreement of Indemnity in favor of Hartford and certain affiliates on or about May 31, 2001 (the "2001 GIA").  A copy of the GIA, with any private information redacted, is attached hereto as Exhibit A.

18.     As a further inducement to execute the bond, Stuebner, Radcrete, Conex, DG Corp., Aistra Construction, Aistra Ex, Douglas George and Maria George executed a General Agreement of Indemnity in favor of Hartford and certain affiliates on or about February 28, 2018 (the "2018 GIA").  A copy of the GIA, with any private information redacted, is attached hereto as Exhibit B.

19.     On or about March 26, 2019, the West Chester Area School District terminated Stuebner's right to complete the East Goshen Elementary School project for certain identified defaults and invoked its rights under the performance bond against Hartford.

20.     With the knowledge and approval of Stuebner, and consistent with its obligations under the Performance Bond, Hartford completed Stuebner's bonded obligations pursuant to a Takeover Agreement dated May 21, 2019.

21.     Rather than relet the project, Douglas George requested that Hartford's consultant, The Vertex Companies Inc., be utilized to complete the balance of the work on the project as the completing construction manager.

22.     To date, Hartford has expended at least $5,826,345 relating to its investigation and evaluation of the school district's bond claim and its fulfillment of Stuebner's bonded obligations.  That amount does not reflect incurred but yet unbilled and/or unpaid costs.  The amount expended may continue to grow as this matter proceeds.

23.     After deducting for progress payments made by the school district to Hartford and indemnity reimbursements from Stuebner to Hartford, Hartford still has a current net loss of at least $454,004 relating to the East Goshen Performance Bond, which such loss may continue to grow.

24.     The indemnity agreements require the indemnitors to indemnify, exonerate, reimburse and hold Hartford harmless from and against all losses (including interest and attorney's fees) sustained or incurred by reason of having executed the Performance Bond.  See, e.g., Exhibit A, ¶ III and ¶ V, and Exhibit B, ¶ 1(e) and ¶ 5.

25.     Hartford has made numerous demands to be reimbursed for its current losses, to no avail.  To date, despite repeated requests, Stuebner has not reimbursed Hartford for the current losses relating to the East Goshen Elementary School.

### COUNT I
### CONTRACTUAL INDEMNITY
### Hartford v. Stuebner, Conex and Radwanski

26.     Hartford incorporates by reference the forgoing paragraphs as though fully set forth herein.

27.     As a result of the Performance Bond issued by Hartford, as surety, and Stuebner, as principal, Hartford has incurred losses and reimbursable costs and fees, including costs and fees for pursuing the instant action.  The amount of interest and the reimbursable costs and fees will continue to grow.

28.     Defendants are in breach of the 2001 GIA for failing to indemnify Hartford for its losses, costs, expenses, fees and interest.

WHEREFORE, Hartford demands judgment against Stuebner, Conex and Peter Radwanski, jointly and severally, in an amount no less than $454,004, plus interest, costs, fees and such other relief as this Court deems just and proper.

**COUNT II**
**CONTRACTUAL INDEMNITY**
**Hartford v. Stuebner, Radcrete, Conex, DG Corp., Aistra Construction,**
**Aistra Ex, Douglass George and Maria George**

29.     Hartford incorporates by reference the forgoing paragraphs as though fully set forth herein.

30.     As a result of the Performance Bond issued by Hartford, as surety, and Stuebner, as principal, Hartford has incurred losses and reimbursable costs and fees, including costs and fees for pursuing the instant action.  The amount of interest and the reimbursable costs and fees will continue to grow.

31.     Defendants are in breach of the 2018 GIA for failing to indemnify Hartford for its losses, costs, expenses, fees and interest.

WHEREFORE, Hartford demands judgment against Stuebner, Radcrete, Conex, DG Corp., Aistra Construction, Aistra Ex, Douglas George and Maria George, jointly and severally, in an amount no less than $454,004, plus interest, costs, fees and such other relief as this Court deems just and proper.

## COUNT III
## COMMON LAW INDEMNITY
### Hartford v. Stuebner

32.     Hartford incorporates by reference the foregoing paragraphs as though fully set forth herein.

33.     The Performance Bond under which the school district made claim against Hartford was issued by Hartford, as surety, and Stuebner, as principal.

34.     By issuing the Performance Bond as surety for Suebner, Hartford agreed to answer for the defaults of Stuebner as per the terms of the bond.

35.     The school district's claim against the Performance Bond was based on the conduct, contractual breaches and/or failure to act of Stuebner.  Stuebner's liability was active, primary and direct, while Hartford's liability was vicarious, derivative and secondary.

36.     Consequently, Stuebner is obligated to indemnify Hartford for any losses incurred in the fulfillment of Stuebner's bonded obligations.

37.     Having discharged obligations for which Stuebner was primarily obligated, Hartford is entitled to be indemnified by Stuebner.

38.     If appropriate, this Count is pled in the alternative.

**WHEREFORE,** Hartford demands judgment against ERS in an amount in excess of jurisdictional limits, plus interest, costs, fees and such other relief as this Court deems just and proper.

### JURY DEMAND

Plaintiff, Hartford Fire and Insurance Company, demands a jury for all issues triable by a jury.

Respectfully submitted:


By:   /s/ Joseph W. Catuzzi
Patrick R. Kingsley
Joseph W. Catuzzi
STRADLEY RONON STEVENS & YOUNG, LLP
2600 One Commerce Square
Philadelphia, PA  19103-7098
(215) 564-8029

*Attorneys for Plaintiff,*
*Hartford Fire and Insurance Company*

**A JURY TRIAL IS DEMANDED.**

# EXHIBIT A



# General Indemnity Agreement

One or more of the undersigned, herein called Indemnitors, has requested or may request Hartford Fire Insurance Company or any of its affiliated or subsidiary insurance companies and/or successors called Surety, to furnish, procure or continue contracts of suretyship, guaranty or indemnity, or other obligatory instruments, herein called Bonds, on behalf of any one or more of the Indemnitors.

By the execution of this Agreement, the Indemnitors expressly warrant their material or beneficial interest in such Bonds, and in consideration of the furnishing, procuring or continuing of such Bonds, and other good and valuable consideration, the Indemnitors hereby jointly and severally agree to the following:

## I

The Surety may decline to execute any Bond without incurring any liability to any Indemnitor. This includes Bonds required in connection with the performance of a contract awarded under a proposal for which the Surety has executed a bid or proposal bond, a bid letter, a consent of surety or an agreement of surety.

Such declination by the Surety shall not affect the liability of any Indemnitor to the Surety relating to other Bonds or to this Agreement.

## II

This Agreement applies to all Bonds executed by the Surety (1) on which any Indemnitor either acts solely or as a member of a partnership or a joint venture, or (2) in connection with which any Indemnitor acts as a silent partner or a silent joint venturer.

If the Surety procures the execution of Bonds by other sureties, or executes Bonds with cosureties, the provisions of this Agreement shall inure to the benefit of such other sureties or cosureties as their interests may appear.

## III

The Indemnitors will indemnify and hold the Surety harmless from all loss, liability, damages and expenses including, but not limited to, court costs, interest and attorney's fees, which the Surety incurs or sustains (1) because of having furnished any Bond, or (2) because of the failure of an Indemnitor to discharge any obligations under this Agreement, or (3) in enforcing any of the provisions of this Agreement.

## IV

On demand by the Surety, the Indemnitors will pay the Surety the amount deemed necessary by the Surety to protect itself from all losses or expenses as soon as the Surety determines that liability exists, whether or not the Surety has made any payment or created any reserve.

## V

The Indemnitors shall be liable to the Surety for all payments, plus interest thereon at the maximum rate permitted by law, from the date such payments are made by the Surety in the belief that either (1) the Surety was or might be liable therefor, or that (2) they were necessary or advisable to protect the Surety's rights or to avoid or lessen the Surety's liability.

Vouchers or other evidence of such payments, including records of any nature maintained by the Surety in the ordinary course of business, shall be prima facie evidence of the existence and extent of the liability of the Indemnitors to the Surety.

## VI

The Surety shall have access to all the books, records and other documents of the Indemnitors during regular business hours or at any other reasonable time until the liability of the Surety under each Bond is terminated. Financial institutions, materialmen, suppliers, bondholders, obligees and all other organizations, partnerships, or individuals dealing with any of the Indemnitors are authorized to furnish the Surety any information requested including the status and condition of work under any contracts being performed by any Indemnitor and the financial status of such contracts.

## VII

With respect to any Bond issued on behalf of an Indemnitor, all Indemnitors assign, transfer and convey to the Surety:

A. All rights of the Indemnitors in, arising from, or related to such Bonds or any bonded or unbonded contracts or any extensions, modifications, alterations or additions thereto;

B. All right, title and interest of the Indemnitors in and to (1) the work performed, (2) all supplies, tools, plant, machinery, equipment and materials purchased for or chargeable to the contract which may be in the process of manufacture, construction or transportation, or in storage anywhere.

These assignments shall take effect with respect to each Bond as of its execution date, but only in the event of any of the following:

(a) An Indemnitor's abandonment, forfeiture or breach of, or failure, refusal or inability to perform, a contract guaranteed by any Bond;

(b) An Indemnitor's failure, refusal or inability to pay any bills or satisfy any debts incurred in connection with the performance of a contract guaranteed by any Bond;

(c) An Indemnitor's failure, refusal or inability to satisfy any condition of any Bond or to comply with any term or provision of this Agreement.

(d) An Indemnitor's failure to pay when due, any debt owed to the Surety;

(e) An Indemnitor's assignment for the benefit of creditors, or the appointment, or the application for the appointment of a receiver or trustee for any Indemnitor whether insolvent or not;

(f) A proceeding which prevents or interferes with an Indemnitor's use of any of the supplies, tools, plant, machinery, equipment or other materials referred to in paragraph B. of this Section;

(g) The death, absconding, disappearance, incompetency, imprisonment or felony conviction of any Indemnitor.

In the event these assignments become operative, the Indemnitors authorize the Surety, at its sole discretion and to the extent it deems appropriate, but without any obligation on its part:

(i) To assert and pursue all of the assigned, transferred or conveyed rights, actions, causes of action, claims and demands;

(ii) To take possession of all or part of the work plus all associated supplies, tools, plant, machinery, equipment, materials, records, drawings and plans, and to arrange for the completion of such work, or to relet, or consent to the reletting or completion of, the contract secured by any Bond.

## VIII

If a Bond is executed in connection with the performance of a contract, the Surety shall be subrogated to all the rights and properties of the Indemnitors in such contract upon any breach of the conditions of the bonded contract. All money paid, or any securities, warrants, checks or evidences of debt, plus any proceeds thereof, given under the bonded contract shall be impressed with a trust in the hands of the Indemnitors in favor of the Surety for the purpose of satisfying the conditions of the bonded contract and shall be used for no other purpose until such conditions have been fully satisfied.

## IX

The Surety, without notice to the Indemnitors and despite any increase in their liability, may agree to any (1) changes in Bonds or bonded contracts or (2) changes in plans or specifications relating to them, or (2) the addition of Indemnitors by addendum to this Agreement.

## X

The Indemnitors expressly waive any notice of the following to which they may be entitled notwithstanding any defenses they otherwise may have been able to assert:

(a) The execution of any Bonds or the refusal to execute any Bonds;

(b) Defaults under contracts or any acts which might result either in claims, or in liabilities of the Surety under any Bonds.

(c) Any act, fact or information concerning or affecting the rights or liabilities of the Surety or any Indemnitor.

## XI

The Surety may sell property assigned to or deposited with it without incurring any liability. The sale may be public or private and with or without notice of the time or place thereof. When all liability of the Surety under all Bonds is terminated, any balance remaining after the Surety has reimbursed itself for all liability, losses and expenses shall be returned to the Indemnitors.

## XII

The Indemnitors irrevocably constitute, appoint and designate the Surety as their attorney-in-fact with the right, but not the obligation, to exercise all rights of the Indemnitors assigned to the Surety, and, in the name of the Indemnitors, to execute and deliver any other assignments or documents deemed necessary by the Surety to effectuate and exercise the rights given it under this Agreement including, but not limited to, the right to endorse the name of any Indemnitor upon any securities, checks, drafts or evidences of debt. The Indemnitors hereby ratify and confirm all acts and actions taken by the Surety as such attorney-in-fact.

## XIII

The Indemnitors may bring separate suits on this Agreement as causes of action accrue, and the bringing of suit or the recovery of judgment upon any cause of action shall not prejudice or bar the bringing of other suits upon other causes of action.

## XIV

Any Indemnitor shall immediately notify the Surety in writing of any demand, notice, suit, action, or proceeding relating to any Bond.

Form S-3327-4   Printed in U.S.A.

**XVII**

The Surety may adjust, settle or compromise any claim, demand, suit or judgment upon any Bonds. If requested by an Indemnitor, the Surety shall litigate such claim or demand, or defend such suit, or appeal from such judgment, provided that the Indemnitor deposits with the Surety, at the time of such request, collateral satisfactory to the Surety to be used to pay any judgment rendered plus interest, costs, expenses and fees, including those of the Surety.

**XV**

This is a continuous Agreement which remains in full force and effect as to every Bond issued by the Surety. However, participation in this Agreement by any Indemnitor may be terminated as to future Bonds by written notice to the Surety which shall become effective on the date of written acceptance thereof by the Surety. Such termination shall not relieve any Indemnitor from liability assumed prior to such termination, nor shall it affect the liability of any other Indemnitor.

**XVI**

The Surety's rights under this Agreement are cumulative with, and in addition to, all other rights of the Surety, however derived. The Surety is not required to enforce or exhaust its rights or remedies against any one Indemnitor before asserting its rights against any other Indemnitor.

**XVII**

If for any reason this Agreement is invalid as to any Indemnitor, or if any Indemnitor's liability under this Agreement is terminated, the remaining Indemnitors shall nevertheless be liable for the full amount of liability, losses and expenses which the Surety may sustain or incur.

**XVIII**

This Agreement constitutes a Security Agreement to the Surety and also a Financing Statement enforceable under the Uniform Commercial Code now or hereafter in force in any jurisdiction.

**XIX**

For the purposes of recording this Agreement, an authenticated true copy hereof shall be regarded as an original.

**XX**

The Indemnitors have read and understand this Agreement. No separate agreements or understandings change the terms of this Agreement, and no terms may be waived or changed without the Surety's written approval.

**XXI**

Attached:   Addendum No.  1

Dated and effective this ⟨ 31st ⟩ day of ⟨ May ⟩, 19 2001

**NOTE:**  Corporate signatures and attestations must be by corporate officers empowered to sign and attest. Attestations must be by corporate officers other than those signing. Witnesses' signatures must be by persons not a party to, or a relative of a party to, this Agreement.

**INDEMNITORS**

Attest: _Larry Sandridge, Controller_ _(Title)_

E.R. Stuebner, Inc.
_(Corporate Name)_
By: _____ (Seal)
Peter D. Radwanski, President
_(Title)_

Attest: _Larry Sandridge, Controller_ _(Title)_

Coney Enterprises, Inc.
_(Corporate Name)_
By: _____ (Seal)
Peter D. Radwanski, President
_(Title)_

Attest: _____ _(Title)_

_____
_(Corporate Name)_
By: _____ (Seal)
_____
_(Title)_

Attest: _____ _(Title)_

_____
_(Corporate Name)_
By: _____ (Seal)
_____
_(Title)_

Attest: _____ _(Title)_

_____
_(Corporate Name)_
By: _____ (Seal)
_____
_(Title)_

Attest: _____ _(Title)_

_____
_(Corporate Name)_
By: _____ (Seal)
_____
_(Title)_

Witness: _____

_____
_(Partnership Name)_
By: _____ (Seal)
_____
_(Individually and as Partner)_

Witness: ................................

Witness: ................................

Witness: ................................ By: ................................
_(Partnership Name)_

................................
_(Individually and as Partner)_

By: ................................
_(Partnership Name)_

................................
_(Individually and as Partner)_

Witness: _____ Peter Radwanski Sadividually
_(Individual Name)_

................................
_(Signature)_

Witness: ................................ ................................
_(Individual Name)_

................................
_(Signature)_

Witness: ................................ ................................
_(Individual Name)_

................................
_(Signature)_

Witness: ................................ ................................
_(Individual Name)_

................................
_(Signature)_

Witness: ................................ ................................
_(Individual Name)_

................................
_(Signature)_

Witness: ................................ ................................
_(Individual Name)_

................................
_(Signature)_

## NOTARY ACKNOWLEDGMENTS
(All "Signatures" must be acknowledged by a Notary Public)

### CORPORATE ACKNOWLEDGMENT

State of ........La.........
}ss.
County of ....Berks....

On the .....31st.... day of .....May...... ,19.2001. before me personally appeared ...Peter D. Radwanski...................................to me known, who being by me duly sworn
.......Sinking. Spring,. PA.
_(City/Town)_ _(State)_
did depose and say: that he resides in ......President.......... of ...E.R. Stuebner, Inc......
that he is the _(Title)_
the corporation described in and which executed the foregoing instrument; that he knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of said corporation; and that he signed his name thereto by like order.

Jacqueline R. Reichart
_(Notary Public)_

Notarial Seal
Jacqueline R. Reichart, Notary Public
Reading, Berks County
My Commission Expires Nov. 11, 2004
Member, Pennsylvania Association of Notaries

### CORPORATE ACKNOWLEDGMENT

State of ........La.........
}ss.
County of ....Berks....

On the .....31st.... day of .....May...... ,19.2001. before me personally appeared ...Peter D. Radwanski...................................to me known, who being by me duly sworn
.......Sinking. Spring,. PA.
_(City/Town)_ _(State)_
did depose and say: that he resides in ......President.......... of ...Conex Enterprises, Inc....
that he is the _(Title)_
the corporation described in and which executed the foregoing instrument; that he knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of said corporation; and that he signed his name thereto by like order.

Jacqueline R. Reichart
_(Notary Public)_

Notarial Seal
Jacqueline R. Reichart, Notary Public
Reading, Berks County
My Commission Expires Nov. 11, 2004
Member, Pennsylvania Association of Notaries

Form S-3327-4   Printed in U.S.A.        Page 3

**PARTNERSHIP ACKNOWLEDGMENT**

State of ..................... }
County of ................ } ss.

On the ............... day of ............... of ............... 19........before me personally

appeared ..................................................................................(City/Town) .....................(State)

to me known and known to me to be one of the partners of the firm of .........................described in and
who executed the foregoing instrument, and he acknowledged to me that he executed the same as the act of said partnership and also as an
individual indemnitor.

.....................................(Notary Public)

---

**INDIVIDUAL ACKNOWLEDGMENT**

State of ......Pa...... }
County of ....Berks.... } ss.

On the ....3ist.. day of ....May........ of ....Peter.D.Radwanski.. Sinking Spring, PA 19 2001, before me personally

appeared ......................................................................................(City/Town) .....................(State)

to me known and known to me to be the person described in and who executed the foregoing instrument, and he acknowledged to me that he
executed the same.

*Jacqueline R. Reichart*

.....................................(Notary Public)

Notarial Seal
Jacqueline R. Reichart, Notary Public
Reading, Berks County
My Commission Expires Nov. 11, 2004
Member, Pennsylvania Association of Notaries

---

**INDIVIDUAL ACKNOWLEDGMENT**

State of ..................... }
County of ................ } ss.

On the ............... day of ............... of ............... 19........before me personally

appeared ..................................................................................(City/Town) .....................(State)

to me known and known to me to be the person described in and who executed the foregoing instrument, and he acknowledged to me that he
executed the same.

.....................................(Notary Public)

---

**INDIVIDUAL ACKNOWLEDGMENT**

State of ..................... }
County of ................ } ss.

On the ............... day of ............... of ............... 19........before me personally

appeared ..................................................................................(City/Town) .....................(State)

to me known and known to me to be the person described in and who executed the foregoing instrument, and he acknowledged to me that he
executed the same.

.....................................(Notary Public)

---

**INDIVIDUAL ACKNOWLEDGMENT**

State of ..................... }
County of ................ } ss.

On the ............... day of ............... of ............... 19........before me personally

appeared ..................................................................................(City/Town) .....................(State)

to me known and known to me to be the person described in and who executed the foregoing instrument, and he acknowledged to me that he
executed the same.

.....................................(Notary Public)

---

Form S-3327-4   Printed in U.S.A.

Page 4



**THE HARTFORD**
FIDELITY & BONDING

ADDENDUM NO. 1 TO

GENERAL INDEMNITY AGREEMENT

To be attached to and form part of that certain General Indemnity Agreement in favor of Hartford Fire Insurance Company dated the 31ˢᵗ day of May , 2001 wherein E.R. Stuebner, Inc. appears as Principals and Peter D. Radwanski appears as Indemnitor.

It is understood and agreed that the liability assumed under the attached General Indemnity Agreement by Peter D. Radwanski as Indemnitor thereon, shall not be satisfied from the real property of Peter D. Radwanski situated in Sinking Spring, Berks County, PA, known and described as 335 Mail Route Road, Sinking Spring, PA, and the improvements and structures thereon, and that such property shall be exempt from levy, execution or sale, or other legal process, insofar as the Hartford Fire Insurance Company's rights under the attached General Indemnity Agreement are concerned.

Subject, otherwise, to all the terms, conditions and provisions of the attached General Indemnity Agreement.

**HARTFORD FIRE INSURANCE COMPANY**

Witness: _____    By: _____
                                                  Keith Flannery, Attorney-in-Fact

Witness: _____    By: _____
                                                  Peter D. Radwanski, Individually

Witness: _____    By: _____

Witness: _____    By: _____

# EXHIBIT B

# General Indemnity Agreement



This General Indemnity Agreement ("Agreement") is made and entered into by the undersigned Indemnitors, for themselves and others, in favor of and as an inducement to Hartford to Underwrite Bonds on behalf of one or more Indemnitors. In consideration of said Underwriting, the Indemnitors jointly and severally acknowledge and agree as follows:

1. **Definitions.** As used in this Agreement, all defined words and terms shall be understood to include each and every tense and form of said word or term along with its/their singular, plural, feminine or masculine form as the case or usage may warrant.

   (a) **"Indemnitor"** shall include, among others, each and every one of the following persons or entities on behalf of itself and all of its existing or prospective heirs, personal representatives, executors, administrators, parent companies, purchasers, successors (through asset acquisition or otherwise), assigns, related entities, co-venturers, joint ventures, affiliates, subsidiaries, divisions, and marital communities along with any entity (whether partially or wholly owned and/or controlled) of whatever description and whenever formed or acquired in which any of the foregoing persons or entities have an ownership or beneficial interest. Indemnitor shall also include any Principal.

| Indemnitor's Name | Address | Tax ID / Social Security Number |
|---|---|---|
| E.R. Stuebner, Inc. | 227 Blair Avenue, Reading, PA 19601 | |
| Radcrete, Inc. | 227 Blair Avenue, Reading, PA 19601 | |
| Conex Enterprises, Inc. | 227 Blair Avenue, Reading, PA 19601 | |
| DG Corp., Inc. | 227 Blair Avenue, Reading, PA 19601 | |
| Aistra Construction, Inc. | 227 Blair Avenue, Reading, PA 19601 | |
| Aistra Ex, Inc. | 227 Blair Avenue, Reading, PA 19601 | |
| Douglas A. George | 38 Maack Road, Pottstown, PA 19465 | |
| Maria E. George | 38 Maack Road, Pottstown, PA 19465 | |

   (b) **"Default"** shall include any one or more of the following:

   i) an Indemnitor's breach, abandonment, failure, refusal or inability to timely perform, in whole or in part, any contract for which a Bond has been Underwritten;

   ii) an Indemnitor's failure, refusal or inability to timely satisfy any debt or obligation incurred as part of any contract for which a Bond has been Underwritten;

   iii) an Indemnitor's failure, refusal or inability to timely satisfy any term or condition of any Bond, any contract for which a Bond has been Underwritten or this Agreement;

   iv) an Indemnitor's use of contract funds in any manner which is inconsistent with any obligation for which a Bond has been Underwritten or the requirements of this Agreement;

   v) a declaration of default, a demand for Hartford to pay or perform, or a termination for default asserted by an obligee relating to any contract for which a Bond has been Underwritten;

   vi) a dissipation or diversion of assets by any Indemnitor which impairs the performance of any term or condition of this Agreement or any contract for which a Bond has been Underwritten or any Bond;

vii)    an Indemnitor's becoming insolvent or the voluntary or involuntary commencement of any proceeding by or against the Principal on the basis of its actual or perceived insolvency, including, without limitation, the appointment of a receiver or trustee, reorganization, liquidation or any similar proceeding;

viii)    the commencement or continuation of any proceeding which deprives or interferes with the Principal's performance of any obligation for which a Bond has been Underwritten or its use of any supplies, tools, plant, machinery, equipment, wherever located, or the work under any contract for which a Bond has been Underwritten:

ix)    the death, disappearance, adjudged incompetence, incarceration, commitment or felony conviction of any Principal;

x)    any material change in the character, financial condition, identity, control, management, beneficial ownership or existence of any Principal;

xi)    an Indemnitor's providing, directly or indirectly, any false or materially misleading statement, document or disclosure to Hartford, or an Indemnitor's failure to fully and timely disclose material information bearing upon either its ability to perform any obligation for which a Bond has been issued or under this Agreement.

(c)    **"Principal"** shall refer to any person or entity in whose name a Bond is executed.

(d)    **"Hartford"** shall include, individually or collectively, Hartford Fire Insurance Company, Hartford Casualty Insurance Company, Hartford Accident and Indemnity Company, Hartford Underwriters Insurance Company, Twin City Fire Insurance Company, Hartford Insurance Company of Illinois, Hartford Insurance Company of the Midwest, Hartford Insurance Company of the Southeast and any of said companies current or future, direct or indirect insurance company affiliates, subsidiaries, parents, assigns, successors, divisions, co-sureties, reinsurers, or any other person or entity Underwriting any Bond at Hartford's request.

(e)    **"Loss"** shall include all manner of losses, costs, expenses or fees of any kind or nature which are paid or incurred by Hartford as a result of or in any way relating to the entering into and enforcement of this Agreement or the Underwriting of any Bonds. Loss shall include, without limitation, any and all expenditures relating to Hartford's financial investigations, claim investigations, claim payments, payments to discharge liability and Bond related litigation of any nature, legal, expert, administrative, consultant and other professional fees and costs, court costs, travel expenses, unpaid premiums, unpaid loans which may be extended to, or guaranteed for or on behalf of any Indemnitor and interest on sums expended at the maximum lawful rate. Loss shall be determined broadly in favor of Hartford.

(f)    **"Bond"** shall include any and all bonds, undertakings, guarantees, commitments, obligations of suretyship and like instruments Underwritten by Hartford or others, including all riders, renewals, continuations, endorsements, changes or modifications on behalf of or at the request of Indemnitors or for which Hartford has an obligation pursuant to a merger, acquisition, asset purchase or similar transaction. For purposes of this Agreement only, in the event Hartford or its authorized agent issues a prequalification or bondability letter or any similar expression of opinion ("Prequalification Letter") on behalf or at the request of any Indemnitor, said Prequalification Letter shall fall within this Agreement's definition of "Bond."

(g)    **"Underwrite"** shall include all manner of underwriting, furnishing, issuing, procuring, analyzing, assuming, executing, considering, renewing, extending, altering, modifying, participating in or continuing any Bond.

(h)    **"Books and Records"** shall include, without limitation, all manner of books, records, personal and corporate financial statements, bank records, bank statements, cancelled checks, tax returns, computer systems, computer programs, software, accounts, invoices, contracts, bid documents, contract documents, subcontracts, purchase orders, correspondence, plans, design documents, record drawings, as built drawings, requests for information, claims, change orders, submittals, schedules, vouchers, account statements, reports, audits, work papers, memos,

correspondence, emails, voice mail, photographs, video, and the like, however, wherever and in whatever manner created, stored or maintained.

2. **Application of Agreement**. This Agreement shall apply to all Bonds Underwritten by Hartford, whether prior to, simultaneously with, or subsequent to this Agreement's execution (1) on behalf or at the request of any Indemnitor; or (2) in connection with contracts in which any Indemnitor has an interest; or (3) for or at the request of any present or future parent, affiliate or subsidiary of any Indemnitor; or (4) for any third party at the request of any Indemnitors. This Agreement is solely for the benefit of Hartford and no other person or entity shall have any rights under this Agreement. The rights of Hartford under this Agreement are in addition to and not in lieu of any and all rights granted by law. Hartford shall have the absolute right to apply any amount owed to any Indemnitor against the amount owed by that Indemnitor to Hartford including the right to set-off any debt owed to any third party against any liability of any Indemnitor that owns or controls said third party.

3. **Premium**. Indemnitors shall timely pay all Bond premiums.

4. **Declination of Bonds**. Hartford shall have the absolute right to cancel, non-renew, modify or decline execution of any Bonds with or without notice to Indemnitors. Hartford shall have no obligation or liability to Indemnitors or others for said cancellation, non-renewal, modification or declination, nor shall such action in any way affect or diminish Indemnitors' obligations to Hartford under this Agreement or otherwise. Hartford's right to decline Bonds includes without limitation, its declination of final Bonds after having Underwritten a bid bond, a Prequalification Letter, or like instruments.

5. **Indemnity and Exoneration**. The Indemnitors shall at all times indemnify, exonerate and hold Hartford harmless from and against all Loss, claims, demands, liabilities, suits and causes of action which are in any way related to any Underwriting activities, Bonds or this Agreement. Indemnitors shall immediately notify Hartford in writing of any demand, notice, suit, claim, action or proceeding relating to any Bond. Hartford may bring separate suits on this Agreement as causes of action accrue, and the bringing of such suit or suits or the recovery of a judgment upon any cause of action shall not prejudice or bar the bringing of additional suits or causes of actions. Confirmation of payments through Hartford's electronic claim system, copies of releases, or other evidence of such payments which are maintained by Hartford in the ordinary course of business shall be prima facie evidence of the existence and extent of the liability of the Indemnitors to Hartford.

6. **Demand for Collateral**. Upon Hartford's demand, the Indemnitors shall immediately deposit with Hartford funds, as collateral, in an amount Hartford deems necessary at the time of said demand to protect itself from actual or anticipated Loss. Demand may be made as soon as a) Hartford determines that liability exists; or b) Hartford has a reasonable basis to believe that it may incur liability or Loss; or c) in the event any Indemnitor diverts contract funds relating to any Bond in violation of Paragraph 11 of this Agreement or applicable law; or d) in the event Hartford deems itself insecure, whether or not Hartford has made any payment or established any reserve and whether or not it has received notice of, accepted or denied any claim in whole or in part. Hartford shall have no duty to invest or pay interest on any such collateral deposit. Said collateral may be used by Hartford in its sole discretion at any time without notice to the Indemnitors to accomplish the purposes of this Agreement. In the event Hartford accepts collateral other than funds, Hartford is authorized, without notice to Indemnitors, to manage, borrow against, sell, pledge, convey or dispose of said collateral by public or private sale and shall not incur any liability to Indemnitors or others for said actions. The Indemnitors shall be entitled to the return of any collateral or collateral proceeds which may remain upon satisfactory evidence to Hartford in its sole discretion that its liability under any and all Bonds has been released and discharged without Loss and Indemnitors have fully complied with this Agreement. The Indemnitors acknowledge and agree that their failure to immediately deposit with Hartford any sums demanded under this section shall cause irreparable harm to Hartford for which it has no adequate remedy at law. Indemnitors agree and shall stipulate in any legal proceeding that Hartford is entitled to injunctive relief for specific performance of said collateral deposit obligation and do hereby expressly waive and relinquish any claims or defenses to the contrary.

7. **Claim Settlement\Mitigation**. Hartford shall have the absolute right to adjust, settle, dispute, litigate, appeal, finance, or compromise any claim, demand, suit, judgment or exposure relating to any Underwriting activities or Bonds without affecting the Indemnitors' liability under this Agreement and Hartford's determination shall be binding

upon the Indemnitors. This absolute right includes the right, but not the obligation, to advance funds or guarantee loans to any Indemnitor. The Indemnitors shall be obligated to Hartford for all payments occasioned thereby whether said payments were made by Hartford in the belief that either (1) Hartford was or might be liable therefore; or (2) payments were necessary or advisable to protect Hartford's rights or to mitigate Hartford's potential liability or Loss. Upon Hartford's demand, Indemnitors shall establish a trust account or accounts with a financial institution acceptable to Hartford, and shall deposit all monies from any contracts for which a Bond has been Underwritten into said trust account(s). The trust account(s) shall be restricted, requiring the signature of an authorized representative of Hartford on all checks or other withdrawal orders drawn against said account(s).

8. **Books and Records**. Hartford shall have the absolute right to review and copy all Books and Records of the Indemnitors. Hartford's access to said Books and Records shall continue until Hartford's liability under all Bonds has been terminated with no Loss and Indemnitors have satisfied all of their obligations under this Agreement. Any person or entity having any manner of relationship with an Indemnitor, including, without limitation, financial institutions, Bond obligees, contracting parties, governmental entities, providers of legal, accounting or engineering services and all other persons or entities is/are expressly authorized by this Agreement to discuss and furnish to Hartford any Books and Records, information or documentation requested including work papers and document drafts.

9. **Assignment**. Effective on the earlier of the date of this Agreement or the date on which Hartford first Underwrites a Bond to, at the request of or on behalf of any Indemnitor, all Indemnitors irrevocably assign, transfer and convey the following to Hartford;

(a) All rights of the Indemnitors in, arising from, or related to Bonds or any bonded or unbonded contracts, subcontracts and subcontract bonds and any extensions, modifications, alterations or additions thereto; and

(b) All right, title and interest of the Indemnitors in and to; (1) the work performed on any Bonded or unbonded contract; and (2) all supplies, tools, plant, machinery, inventory, equipment and materials; and (3) all materials purchased for or chargeable to any contract or Bond which may be in the process of manufacture, construction or transportation, or in storage anywhere; and (4) Books and Records, patent rights, copyrights, trademarks, and any and all bond claims or other affirmative claims; and (5) computers, computer systems, programs and licenses; and

(c) All rights arising out of insurance policies in which any Indemnitor has an interest as a policyholder, beneficiary or otherwise; and

(d) Any and all accounts receivable, accounts, chattel paper, documents of title, intangibles, claims, judgments, choses in action, purchase orders, bills of lading, federal or state tax refunds, tort claims, premiums, deferred payments, refunds, retainage or retainage account in which the Indemnitors have an interest.

10. **Default**. Upon Default, Hartford shall have the absolute right to take any or all of the following actions:

(a) Assert, enforce, and use all the assigned, transferred or conveyed rights;

(b) Take possession of all or any part of the work under any or all contracts relating to or for which a Bond has been Underwritten;

(c) Take possession of all tools, plant, machinery, equipment, office equipment, Books and Records, hardware, software, stored data, materials, supplies, inventory, work in process and completed assemblies, wherever located;

(d) Execute any document in the name of any Indemnitor necessary to effectuate the purposes and terms of this Agreement or enforce any common law rights;

(e) Take such other action and enforce such other rights permitted by this Agreement, at law or otherwise.

11. **Trust Fund**. If a Bond is Underwritten in connection with the performance of any contract, the entire contract price shall be dedicated to the satisfaction of the obligations of the Bond and this Agreement. All money paid or any securities, warrants, checks or evidences of debt given under contracts relating to or for which a Bond has been issued shall be impressed with a trust for the purpose of satisfying the obligations of the Bond Underwritten for said contract and this Agreement and shall be used for no other purpose until all such obligations have been fully satisfied.

12. **Attorney-In-Fact**. The Indemnitors irrevocably appoint and designate Hartford as their attorney-in-fact with the right, but not the obligation, to exercise all rights, create, execute and deliver any documents and take and perform all other actions deemed necessary by it to secure all rights provided by this Agreement or at law, including, without limitation, executing documents, stipulations and directives and endorsing securities, checks, drafts or like documents in the name of any Indemnitor. The Indemnitors ratify and confirm all actions taken or to be taken by Hartford as their attorney-in-fact. This power is coupled with an interest and shall survive the death or incapacity of any Indemnitor.

13. **Termination of Prospective Liability**. An Indemnitor's sole and exclusive means of terminating its prospective liability under this Agreement shall be through a written notice sent by overnight delivery, personal service, certified or registered mail to Hartford Fire Insurance Company, Bond Department, One Hartford Plaza, T-4, Hartford, CT 06155, Attn: Vice President, Bond. Said termination shall be effective on the later of the date set forth in the notice or 40 days after actual receipt of the notice by Hartford's designated recipient as set forth herein. Said termination shall not release the terminating Indemnitor from obligations under this Agreement for Bonds Underwritten prior to the effective date of termination or which arose prior to the effective date of termination nor shall it affect the continuing liability of any non-terminating Indemnitor.

14. **Joint, Several and Continuing Obligations**. The Indemnitors' obligations under this Agreement are joint, several and continuing. Hartford shall not be required to enforce or exhaust its rights or remedies against any one or more Indemnitors before asserting its rights against any other Indemnitors.

15. **Equitable Remedies**. The Indemnitors acknowledge and agree that their failure to immediately perform any obligation or requirement of this Agreement shall cause irreparable harm to Hartford for which there is no adequate remedy at law and the Indemnitors shall upon Hartford's demand stipulate, either directly or through the attorney-in-fact provision, that Hartford is entitled to all manner of equitable relief including, without limitation, specific performance and injunctive relief in addition to the relief otherwise afforded by this Agreement or at law.

16. **Representations**. The Indemnitors represent, warrant and agree that they have a substantial, material and beneficial interest in (a) Hartford Underwriting any Bonds; and (b) obtaining Bonds hereunder; and (c) each of the other Indemnitors obtaining Bonds hereunder; and (d) the transaction(s) for which they or any other Indemnitor has applied or will apply to Hartford for Bonds pursuant to this Agreement. The Indemnitors confirm their full power and authorization to execute, deliver and perform this Agreement. The Indemnitors further acknowledge and agree that their execution, delivery and performance of this Agreement shall not be in conflict with or result in a violation of any term, condition or provision of any charter documents, bylaws, operating agreements or similar formation or operational documents of such Indemnitors, or any law, rule, regulation, order, writ, injunction, judgment or decree of any court or governmental authority or any other agreement binding upon Indemnitors, nor shall it constitute a Default thereunder. Indemnitors confirm that there have been no verbal representations made to induce the Indemnitors to execute this Agreement and that each and every agreement, term, commitment, condition and waiver contained in this Agreement was knowingly, willingly and voluntarily made as an inducement to Hartford after a full and complete opportunity by Indemnitors to have the entirety of this Agreement reviewed carefully by legal counsel.

17. **Waiver.** In addition to other express waivers contained in this Agreement, the Indemnitors acknowledge and agree as follows:

(a) **Waiver of Notice**. The Indemnitors expressly waive any right to be notified by Hartford of the fact or happening of any act, event, information or occurrence which has or may give rise to the possibility of Loss or promote the recovery of Loss under this Agreement, including, without limitation, Underwriting, cancelling, declining, nonrenewing, or modifying any Bonds, claims, demands, lawsuits, settlements, releases, loans, forbearances or

other like acts, events or occurrences, it being expressly confirmed by the Indemnitors that lack of notice to an Indemnitor of any matter known to Hartford shall not be asserted as a defense to any claim by Hartford nor shall it form the basis of a demand against Hartford regardless of any defenses or objections which might have been asserted by Indemnitors to such actions. Additionally, the Indemnitors expressly waive any right to be notified by Hartford, that it (a) executed any Bond for any Indemnitor; (b) effected changes in Bonds or bonded contracts or the plans or specifications relating to them; (c) increased or decreased any Indemnitors obligations under this Agreement.

(b) **Waiver of Homestead/Property**.  To the extent permitted by law, Indemnitors expressly waive, abandon and agree not to assert in any proceeding or action relating to any Bond or the enforcement of this Agreement, any statutory or common law claims or exemptions relating to Homestead and any claim that any property, whether Homestead or otherwise, is exempt from levy, execution, sale or other legal process under the laws of any State, Territory, Possession or Tribe.

(c) **Procedural Waivers**.  In any proceeding or action relating to any Bond or the enforcement of this Agreement, Indemnitors, unless requested by Hartford to assert said rights, expressly waive, abandon and agree not to assert as a claim, defense or otherwise:

(i)   any right to a trial by jury; and

(ii)  any objection to venue, claim of forum non conveniens or any claim that the court in which the action or proceeding is brought lacks personal or subject matter jurisdiction; and

(iii) any claim that the law applicable to any action or proceeding as determined by Hartford is improper or incorrect; and

(iv)  exhaustion of remedies.

18. **Choice of Law**.  At the sole election of Hartford, this Agreement is to be governed by the laws of the State in which any Indemnitor resides or can be located or the site of any contract for which any Bond is Underwritten.  Hartford's election hereunder shall be binding on the Indemnitors.

19. **Credit Reports**.  Indemnitors hereby expressly authorize Hartford to access their credit reports at any time until all obligations of said Indemnitor have been fully discharged for any of the following purposes:  (a) to verify information provided to Hartford; (b) for underwriting purposes; (c) to investigate claims or potential claims relating to the Underwriting of Bonds; (d) for debt collection; (e) for enforcement of this Agreement.

20. **Security Interest**.  This Agreement constitutes a Security Agreement in favor of Hartford and also a Financing Statement enforceable in accordance with the provisions of the Uniform Commercial Code (UCC) now or hereafter in force in any jurisdiction.  The Indemnitors hereby consent to Hartford perfecting its rights hereunder without providing notice. Hartford may make such additions to this Agreement as may be necessary or desirable to permit its filing as a Financing Statement under the UCC, and the Indemnitors shall, upon demand, immediately execute and deliver such further instruments as may be necessary or desirable to permit either the filing of this Agreement as a Financing Statement or the filing of a Financing Statement based upon this Agreement as a Security Agreement in such places as Hartford shall determine.  A copy of this Agreement shall, if recorded, constitute a consensual lien upon any and all interest in real estate then owned, in whole or in part, by the Indemnitors.

21. **Non Waiver by Hartford**.  Hartford's delay, forbearance, non-exercise or neglect in pursuing the enforcement of any provision, right or remedy afforded by this Agreement is not, and shall not be construed as, a waiver of any said provision, right or remedy nor shall it operate to prejudice the rights of Hartford to pursue any of said provisions, rights and remedies against any Indemnitor at any time.

22. **Severability**.  If any provision of this Agreement is deemed invalid, all other provisions shall be construed and enforced with the same effect as if the invalid provision was omitted. Minor irregularities in the form of any signature

or acknowledgment forming part of this Agreement shall not constitute a defense to the enforcement of this Agreement.

23. **Time is of the Essence**.  Time is of the essence with respect to Indemnitors obligations under this Agreement.

24. **Counterparts**.  This Agreement may be executed in any number of counterparts, each of which shall be an original but all of which together shall constitute one instrument.  Each counterpart may consist of a number of copies hereof, each signed by less than all of the parties hereto.

25. **Headings**.  Paragraph headings are inserted for convenience only and are not to be used to interpret the Agreement.

26. **Copies as Original**.  An authenticated true and correct copy of this Agreement, however stored or reproduced, shall for all purposes be taken as an original.

27. **Additional Surety Documents**.  The Indemnitors acknowledge and confirm that any of them may at any time enter into other and further written agreements or documents with or in favor of Hartford including, without limitation indemnity agreements, collateral agreements, loan agreements, subordination agreements, capital retention agreements, stock pledge agreements, deeds, notes, conveyances and other agreements and documents of like description ("Additional Surety Documents").  Indemnitors acknowledge and agree that this Agreement and any Additional Surety Documents are cumulative with, in addition to, not in lieu of and shall not be deemed to supersede, replace or compete with one another but shall in all respects be construed to be complimentary.  Conflict or differences within and between the provisions of this Agreement and any Additional Surety Documents shall be interpreted, construed and resolved as broadly as possible in favor of Hartford.

28. **Amendments**.  Any amendments, or modifications to this Agreement shall have no effect unless they are in writing and duly executed by an authorized employee of Hartford.

29. **Special Provisions**.  **Not Applicable.**

**The Indemnitors have read and understand this Agreement. Indemnitors acknowledge that not including signature pages this is a 7 page document containing 29 numbered paragraphs.**

Dated and effective this _____28th_____ day of _____February_____ , 2018

Signature for General Indemnity Agreement

Corporate indemnity signatures must be by corporate officers empowered to sign. Witness signatures must be by persons not a party to, or a relative to a party to, this Agreement. Each indemnitor signature must have a separate acknowledgment.

**WITNESS:**                                                    **INDEMNITOR:**

                                                                E.R. Stuebner, Inc.

_____                By: _____ (SEAL)
{Signatory Name}                                                Douglas A. George, President

**ACKNOWLEDGMENT**

State of _PA_

County of _Berks_                    } ss

On the _20_ day of _February_, 20_18_, before me, _Kelly A. Rotondo_                              , personally appeared
                                                              (Name of Notary Public)

**Douglas A. George, President of E.R. Stuebner, Inc.** ☐ personally known to me –OR-- ☑ proved to me on the basis of satisfactory evidence to
be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

_1285464_
Notary Registration Number

_____
Notary Public (signature)

(SEAL)          COMMONWEALTH OF PENNSYLVANIA          My commission expires the _25_ day of _August_, 20_18_
                        NOTARIAL SEAL
                KELLY A. ROTONDO, Notary Public
                West Reading Borough, Berks County
                My Commission Expires August 25, 2018

Signature for General Indemnity Agreement

Corporate indemnity signatures must be by corporate officers empowered to sign. Witness signatures must be by persons not a party to, or a relative to a party to, this Agreement. Each indemnitor signature must have a separate acknowledgment.

**WITNESS:**                                                    **INDEMNITOR:**

                                                                Radcrete, Inc.

_____                By: _____ (SEAL)
{Signatory Name}                                                Douglas A. George, President

**ACKNOWLEDGMENT**

State of _PA_

County of _Berks_                    } ss

On the _20_ day of _February_, 20_18_, before me, _Kelly A. Rotondo_                              , personally appeared
                                                              (Name of Notary Public)

**Douglas A. George, President of Radcrete, Inc.** ☐ personally known to me –OR-- ☑ proved to me on the basis of satisfactory evidence to be the
person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

_1285464_
Notary Registration Number

_____
Notary Public (Signature)

(SEAL)          COMMONWEALTH OF PENNSYLVANIA          My commission expires the _25_ day of _August_, 20_18_
                        NOTARIAL SEAL
                KELLY A. ROTONDO, Notary Public
                West Reading Borough, Berks County
                My Commission Expires August 25, 2018

General Indemnity Agreement
PERF_GIA_L2010001                                                                                      Page 8 of 11

Signature for General Indemnity Agreement

Corporate indemnity signatures must be by corporate officers empowered to sign.  Witness signatures must be by persons not a party to, or a relative to a party to, this Agreement.  Each indemnitor signature must have a separate acknowledgment.

**WITNESS:**                                                                                                          **INDEMNITOR:**

Conex Enterprises, Inc.

{Signatory Name}                                                        By: _____ (SEAL)
                                                                                                Douglas A. George, President

**ACKNOWLEDGMENT**

State of _____
County of _____ } ss

On the _____ day of __February__, 20_/8_, before me, __Kelly X. Rotondo__, personally appeared
(Name of Notary Public)

**Douglas A. George, President of Conex Enterprises, Inc.** ☐ personally known to me --OR-- ☐ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

_1285464_
Notary Registration Number

_____
Notary Public (signature)

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
KELLY A. ROTONDO, Notary Public
West Reading Borough, Berks County
My Commission Expires August 25, 2018

(SEAL)

My commission expires the _25_ day of _August_, 20_18_

---

Signature for General Indemnity Agreement

Corporate indemnity signatures must be by corporate officers empowered to sign.  Witness signatures must be by persons not a party to, or a relative to a party to, this Agreement.  Each indemnitor signature must have a separate acknowledgment.

**WITNESS:**                                                                                                          **INDEMNITOR:**

DG Corp., Inc.

{Signatory Name}                                                        By: _____ (SEAL)
                                                                                                Douglas A. George, President

**ACKNOWLEDGMENT**

State of _____
County of _____ } ss

On the _____ day of __February__, 20/8, before me, __Kelly X. Rotondo__, personally appeared
(Name of Notary Public)

**Douglas A. George, President of DG Corp., Inc.** ☐ personally known to me --OR-- ☐ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

_1285464_
Notary Registration Number

_____
Notary Public (signature)

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
KELLY A. ROTONDO, Notary Public
West Reading Borough, Berks County
My Commission Expires August 25, 2018

(SEAL)

My commission expires the _25_ day of _August_, 20_18_

General Indemnity Agreement
PERF_GIA_L2010001

Signature for General Indemnity Agreement

Corporate indemnity signatures must be by corporate officers empowered to sign. Witness signatures must be by persons not a party to, or a relative to a party to, this Agreement. Each indemnitor signature must have a separate acknowledgment.

**WITNESS:**                                    **INDEMNITOR:**

Aistra Construction, Inc.

By: _____ (SEAL)
{Signatory Name}                              Douglas A. George, President

**ACKNOWLEDGMENT**

State of _____

County of _____ Berks _____ } ss

On the 20 day of February, 20 18, before me, Kelly A. Rotondo _____, personally appeared **Douglas A. George, President of Aistra Construction, Inc.** ☐ personally known to me –OR-- ☐ proved to me on the basis of satisfactory (Name of Notary Public) evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Notary Registration Number 128 5464 COMMONWEALTH OF PENNSYLVANIA

Notary Public (signature)

(SEAL)

NOTARIAL SEAL
KELLY A. ROTONDO, Notary Public
West Reading Borough, Berks County
My Commission Expires August 25, 2018

My commission expires the 25 day of August, 20 18

---

Signature for General Indemnity Agreement

Corporate indemnity signatures must be by corporate officers empowered to sign. Witness signatures must be by persons not a party to, or a relative to a party to, this Agreement. Each indemnitor signature must have a separate acknowledgment.

**WITNESS:**                                    **INDEMNITOR:**

Aistra Ex, Inc.

By: _____ (SEAL)
{Signatory Name}                              Douglas A. George, President

**ACKNOWLEDGMENT**

State of _____

County of _____ Berks _____ } ss

On the 20 day of February, 20 18, before me, Kelly A. Rotondo _____, personally appeared (Name of Notary Public) **Douglas A. George, President of Aistra Ex, Inc.** ☐ personally known to me –OR-- ☑ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Notary Registration Number 128 5464 COMMONWEALTH OF PENNSYLVANIA

Notary Public (signature)

(SEAL)

NOTARIAL SEAL
KELLY A. ROTONDO, Notary Public
West Reading Borough, Berks County
My Commission Expires August 25, 2018

My commission expires the 25 day of August, 20 18

Signature for General Indemnity Agreement

Corporate indemnity signatures must be by corporate officers empowered to sign.  Witness signatures must be by persons not a party to, or a relative to a party to, this Agreement.  Each indemnitor signature must have a separate acknowledgment.

**WITNESS:**                                                **INDEMNITOR:**

Douglas A. George

By: _____ (SEAL)

_{Signatory Name}_                                          Douglas A. George, Individual

| ACKNOWLEDGMENT |
|---|

State of _____Pa_____
County of _____Berks_____ } ss

On the _13th_ day of _February_, 20_18_, before me, _Terry Lynn Stamm_ _____, personally appeared
(Name of Notary Public)

**Douglas A. George, Individually** [X] personally known to me –OR-- ☐ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

_1117313_
Notary Registration Number

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Terry Lynn Stamm, Notary Public
City of Reading, Berks County
My Commission Expires Sept. 9, 2019
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

_Terry Lynn Stamm_
Notary Public (signature)

**(SEAL)**                My commission expires the _13th_ day of _February_, 20_18_

Signature for General Indemnity Agreement

Corporate indemnity signatures must be by corporate officers empowered to sign.  Witness signatures must be by persons not a party to, or a relative to a party to, this Agreement.  Each indemnitor signature must have a separate acknowledgment.

**WITNESS:**                                                **INDEMNITOR:**

Maria E. George

By: _____ (SEAL)

_{Signatory Name}_                                          Maria E. George, Individual

| ACKNOWLEDGMENT |
|---|

State of _____Pa_____
County of _____Berks_____ } ss

On the _13th_ day of _February_, 20_18_, before me, _Terry Lynn Stamm_ _____, personally appeared
(Name of Notary Public)

**Maria E. George, Individually** [X] personally known to me –OR-- ☐ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

_1117313_
Notary Registration Number

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Terry Lynn Stamm, Notary Public
City of Reading, Berks County
My Commission Expires Sept. 9, 2019
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

_Terry Lynn Stamm_
Notary Public (signature)

**(SEAL)**                My commission expires the _13th_ day of _February_, 20_18_